UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.L.C.,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX, et al.,<br><br>Respondents. | No. 1:26-cv-08530-DC-CSK<br><br><u>ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR A TEMPORARY RESTRAINING ORDER</u><br><br>(Doc. Nos. 1, 2, 3) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 3), filed in conjunction with his petition for writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) Neither party opposes the court ruling directly on the merits of Petitioner's habeas petition. (Doc. Nos. 7 at 4; 8 at 10.) For the reasons explained below, the court finds that Respondents violated Petitioner's Fifth Amendment right to due process by detaining him without providing him an opportunity to contest the basis for his detention in violation of 8 C.F.R. §§ 241.4 and 241.13. Thus, the court will grant Petitioner's habeas petition and motion for a temporary restraining order and will order Petitioner's immediate release.

/////

/////

/////

## BACKGROUND

Petitioner J.L.C.[1] is a native of Honduras. (Doc. No. 1 at ¶ 1.) Petitioner entered the United States in 2019, was encountered by immigration officers near the border, and was released on his own recognizance. (*Id.* at ¶ 19.) Petitioner has lived in the United States since his 2019 entry and currently lives in Richmond, California, with his partner and their four children. (*Id.* at ¶ 12.) On March 13, 2020, Petitioner was ordered removed from the United States. (*Id.* at ¶ 20.) He did not appeal that order due to the chaos created by the COVID-19 pandemic. (*Id.* at ¶ 21.) Petitioner is preparing to file a motion to reopen based on the alleged ineffective assistance of his prior counsel and the extraordinary circumstances presented by the pandemic. (*Id.*) Petitioner has accrued some criminal history while in the United States, including an arrest for driving under the influence and several interactions with police relating to domestic disputes. (*Id.* at ¶ 22.)

On October 8, 2026, Petitioner was unexpectedly detained by immigration authorities while driving his kids to school. (*Id.* at ¶ 24.) The immigration authorities identified themselves as police, did not show him a warrant and did not tell him why he was being detained. (*Id.*) Petitioner received no further pre-deprivation process. (*Id.* at ¶¶ 27–29.) Petitioner has remained in immigration detention since that time, currently at the Golden State Annex in McFarland, California. (*Id.* at ¶ 30.)

On October 18, 2026, Petitioner filed the pending habeas petition arguing that his warrantless arrest without process violated the Immigration and Nationality Act and Petitioner's right to due process under the Fourth Amendment. (*Id.* at 9–14.) On that same day Petitioner filed the pending motion for a temporary restraining order requiring his immediate release, preventing his re-detention absent pre-deprivation process, and enjoining his transfer out of the Eastern

[1] On October 18, 2026, Petitioner filed a motion to proceed under pseudonym arguing that his anonymity is warranted because he "sought asylum in the United States based on fear of harm in Honduras" and "litigating this petition under his true name would link Petitioner publicly to his asylum claim, his removal order, and the circumstances of his detention," including to those "persons in Honduras from whom he fled." (Doc. No. 2 at 3.) Respondents do not oppose Petitioner's motion. The court finds that the severity of Petitioner's threatened harm and the reasonableness of his fear of retaliation outweighs any prejudice caused to Respondents and the public interest and will therefore grant Petitioner's motion to proceed under pseudonym.

District of California pending resolution of this case. (Doc. No. 3 at 14.)

On October 21, 2026, Respondents filed a response to Petitioner's habeas petition and motion for a temporary restraining order arguing that Petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6) due to his final order of removal, that his detention has not grown unconstitutionally prolonged, and that his removal is imminent. (Doc. No. 7 at 2–4.) Respondents attached to their opposition Petitioner's record of deportable alien, Petitioner's order of removal, Petitioner's warrant of removal dated October 7, 2026, and Petitioner's motion to reopen removal proceedings dated October 16, 2026. (*Id.* at 5–29.)

On October 22, 2026, Petitioner filed a reply arguing that Respondents did not produce documents sufficient to show that Petitioner's detention was lawful. (Doc. No. 8 at 1.)

**LEGAL STANDARD**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "[T]he 'in custody' provision . . . requires only that a petitioner be incarcerated—or, as here, in INS custody—at the time a habeas petition [was] filed." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr.*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678 (2001).

**DISCUSSION**

Both parties agree that Petitioner is subject to a final order of removal such that his current immigration detention is governed by 8 U.S.C. § 1231(a)(6). (Doc. Nos. 1 at ¶ 36; 8 at 2.) Petitioner argues, however, that Respondents violated his rights under the Immigration and

Nationality Act and Fifth Amendment Due Process Clause because upon his detention they "did not provide Petitioner with written notice of the reasons for his re-detention, did not afford him an interview, and did not make any individualized custody determination before or after his arrest" in violation of 8 C.F.R. § 241.4. (Doc. No. 1 at ¶ 44.) Respondents contend that under the Immigration and Nationality Act they have "the duty and authority to execute [his] removal order, which [they] cannot accomplish without first taking Petitioner into custody." (Doc. No. 7 at 3.) Respondents contend they complied with Petitioner's pre-deprivation protections by issuing him a warrant of removal that "informed Petitioner that he was to be arrested subject to a removal order." (*Id.* at 4.) Respondents further emphasize that Petitioner was "not subject to an order of supervision" at the time of his detention such that he "was not due any other process beyond notifying him of his arrest to execute a removal order." (*Id.*)

This court has repeatedly held that where the government has knowledge of a noncitizen's allegedly unlawful presence in the United States but does not timely detain the noncitizen for removal proceedings, due process requires that the government provide the noncitizen with a pre-deprivation bond hearing before they may be detained. *See Oliveira Tinoco v. Albarran*, No. 1:26-cv-05505-DC-CKD, 2026 WL 2949219 (E.D. Cal. Oct. 1, 2026) (holding that noncitizen who overstayed her visa was entitled to pre-deprivation bond hearing when she repeatedly applied for immigration relief after expiration of her visa but was not promptly detained); *Antunez-Santos v. Chestnut*, No. 1:26-cv-07587-DC-AC, 2026 WL 3072454 (E.D. Cal. Oct. 14, 2026) (same as to noncitizen detained over two years after expiration of his temporary protected status). However, the petitioners in those cases were detained under § 1226(a), whereas here Petitioner is detained under § 1231(a).

Another court in the Ninth Circuit, however, recently considered a substantially similar situation. In *Orellano v. Hernandez*, No. 2:26-cv-01167-LK, 2026 WL 1283520 (W.D. Wash. May 11, 2026), the petitioner was a noncitizen who was ordered removed from the United States on March 4, 2025, but was not in ICE custody at the time her removal order became final and was not detained until approximately one year later. *Orellano*, 2026 WL 1283520, at *1. The petitioner, like Petitioner in this case, was not provided with any pre-deprivation process. *Id.*

After determining that the petitioner was detained pursuant to 8 U.S.C. § 1231(a)(6), the court in *Orellano* concluded that the petitioner was statutorily entitled to the pre-deprivation process provided in 8 C.F.R. §§ 241.4 and 241.13. *Id.* at *4. The court in *Orellano* clarified that those provisions facially pertain to the "revocation of release of a noncitizen previously released pursuant to 8 U.S.C. § 1231(a)(6)" but that the government "opted not to detain [the petitioner] for roughly a year after her removal order became final" such that there was no explicit revocation of release. *Id.* However, the court in *Orellano* emphasized that 8 U.S.C. § 1231(a)(2)(A) mandates that the government "shall detain" the petitioner during the removal period, and the government's decision not to do so constituted an implicit release on supervision following the removal period. *Id.* ("[A]lthough ICE did not formally designate [the petitioner] as being on supervised release under Section 1231(a)(3) and (a)(6), her release thereunder was necessarily implied by Respondents' discretionary decision to keep her on release after the removal period, and the implementing regulations provide the process required under the statute to revoke that release."). The court further found that the government's failure to comply with the pre-deprivation procedures provided in §§ 241.4 and 241.13 constituted a violation of the petitioner's procedural right to due process because "[t]he procedures set forth in both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." *Id.* at *6 (quoting *Hall v. Nessinger*, No. 25-cv-00667-JJM-PAS, 2026 WL 18583, at *4 (D.R.I. Jan. 2, 2026)). Thus, because the government failed to abide by the procedural protections of §§ 241.4 and 241.13, the court in *Orellano* ordered the petitioner's immediate release. *Id.* at *7; *see also Mekolli v. Hernandez*, No. 2:26-cv-02815-JNW, 2026 WL 2883341, at *2 (W.D. Wash. Sep. 25, 2026) (stating that ICE "effectively granted [noncitizen's] release under 8 U.S.C. § 1231(a)(6)" by failing to detain her during the removal period such that the government "was required to follow the law governing revocation of release when it detained her" again).

Here, Petitioner's order of removal became administratively final on or about April 12, 2020, when his time to appeal his order of removal expired. *See* 8 C.F.R. § 1241.1(b) (stating that an order of removal becomes administratively final "[u]pon expiration of the time allotted for an

appeal if the [noncitizen] does not file an appeal within that time”). Thus, Petitioner’s removal period ended on or about July 12, 2020. *See* 8 U.S.C. § 1231(a)(1)(B)(i) (stating that three-month removal period begins upon “the date the order of removal becomes administratively final”). Respondents elected not to detain Petitioner during this period, despite having knowledge of his presence in the United States. Accordingly, as in *Orellano* and *Mekolli*, Petitioner’s release was necessarily implied, and Respondents were required to provide Petitioner with the pre-deprivation process provided in 8 C.F.R. §§ 241.4 and 241.13 before they could effectuate his detention. As Respondents do not allege he was detained pursuant to that process nor attach documentation demonstrating that process occurred, Petitioner’s detention violates both his statutory rights under the Immigration and Nationality Act and constitutional rights under the Fourth Amendment Due Process clause. Thus, the court will grant Petitioner’s petition for writ of habeas corpus and motion for a temporary restraining order and will order his immediate release.

**CONCLUSION**

For the reasons set forth above,

1. Petitioner’s motion for a temporary restraining order (Doc. No. 3) and petition for writ of habeas corpus (Doc. No. 1) are GRANTED as follows;
    a. Respondents shall immediately release Petitioner J.L.C. (A-201-961-170) from their custody;
    b. Upon his release, Respondents shall not impose any additional restrictions on Petitioner, such as electronic monitoring, unless that is determined to be necessary at a future custody hearing;
    c. Respondents shall RETURN all of Petitioner’s documents and possessions upon his release from custody;
    d. Respondents are enjoined and restrained from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. §§ 241.4 and 241.13;
2. Petitioner’s motion to proceed under a pseudonym (Doc. No. 2) is GRANTED;

3. The Clerk of the Court is directed to serve a copy of this order on the Golden State Annex Detention Facility; and

4. The Clerk of the Court is directed to enter judgment for Petitioner and close this case.

IT IS SO ORDERED.

Dated: **November 5, 2026**

Dena Coggins
United States District Judge